[No. 29235. Department One. April 18, 1944.]

THE STATE OF WASHINGTON, Respondent, v. CHARLES H. JOHNSON, Appellant.[1]

Vanderveer, Bassett & Geisness, for appellant.

Lloyd Shorett and Attwood A. Kirby, for respondent.

[1]Reported in 148 P. (2d) 320.

BLAKE, J.—By information, defendant was charged in separate counts with four different violations of the Laws of 1937, chapter 119, p. 468, § 1 (Rem. Rev. Stat. (Sup.), § 2472-1 [P. C. § 9116-21]). Count one, which is typical of the others, charged that defendant "wilfully, unlawfully, and feloniously did *deal in* and *lease* to the Houghs Creamery . . . in the City of Seattle . . . a machine of a kind commonly used for gambling, to-wit: a slot machine . . ." (Italics ours.)

Defendant demurred to the information and to each count on the ground of duplicity and indefiniteness. The demurrer was overruled. Defendant stood trial without introducing any evidence in his own behalf. A verdict of guilty having been returned on each count, he interposed a motion in arrest of judgment. The court denied the motion, entered judgment on the verdict, and imposed sentence. Defendant appeals.

The assignments of error challenge the information for duplicity and indefiniteness, and the sufficiency of the evidence to sustain the verdict.

The evidence was wholly insufficient to sustain the verdict on the charge that appellant "did . . . lease" any slot machines. Likewise, the evidence was insufficient to sustain the verdict on the charge that he "did deal in" slot machines in the light of what we regard as the generally accepted definition of the term "dealer," which is: one who buys *and* sells personal property with a profit objective. *State v. Silverman,* 75 N. H. 50, 70 Atl. 1076; *Delaware & H. Canal Company's Case,* 8 Pa. Co. Ct. 496; *People v. Stevens,* 10 Cal. App. (2d) 763, 51 P. (2d) 1179; *Allison & Co. v. Killough,* 156 Tenn. 294, 300 S. W. 5; *Egan v. State,* 68 S. W. (Tex. Crim. App.) 273; *In re I. Rheinstrom & Sons Co.,* 207 Fed. 119; *State v. Rosenbaum,* 80 Conn. 327, 68 Atl. 250, 15 L. R. A. (N. S.) 288, 125 Am. St. 121.

Respondent relies on the following definitions of "deal": "To act as an intermediary in business or any affairs; to manage; to make arrangements; to negotiate." Webster's New International Dictionary (1919, subd. 8). " 'Deal' is

not a technical term. . . . It has been defined as meaning an arrangement to attain a desired result by a combination of interested parties; a secret arrangement, as in business or political bargains; also an act of buying and selling; a bargain." 25 C. J. S. 1039.

█ Accepting any one of these definitions and conceding the evidence sufficient to sustain the verdict under it, then the information must be held fatally defective because it did not set up facts sufficient to inform appellant in what manner the state would attempt to prove that he dealt in slot machines.

The Laws of 1937, chapter 119, p. 468, upon which the prosecution is based is entitled: "AN ACT relating to slot machines, defining *crimes*, prescribing penalties for violation thereof, and declaring that this act shall take effect immediately." (Italics ours.) The pertinent part of the act is contained in § 1, which provides:

"Every person who shall bring into this state, buy, sell, lease, deal in, have in his possession, acquire for use in or keep in any building or boat or part thereof owned, leased, or occupied by him as a public place . . . any slot machine of a kind commonly used for gambling . . . shall be guilty of a felony."

Gauged by the standard set up in the decision of this court in *Seattle v. Molin,* 99 Wash. 210, 169 Pac. 318, there can be no doubt that the information in this case is duplicitous and fatally indefinite. In that case, the prosecution was upon a complaint based upon an ordinance which according to appellant's brief provided:

"It shall be unlawful for any person . . . . to manufacture, sell, barter, exchange, give away, furnish or otherwise dispose of any intoxicating liquor; or to buy, receive or keep any intoxicating liquor with intent to sell, barter, exchange, give away, use, furnish, or otherwise dispose of the same; or to buy, accept or receive the same; or for any person, other than a licensed druggist or pharmacist or a person keeping alcohol to be used for mechanical or chemical purposes only, to have in his possession more than one-half gallon or two quarts of liquor other than beer, or

more than twelve quarts or twenty-four pints of beer, for any purpose whatever; . . ."

The complaint was couched in the terms of the ordinance. Holding it duplicitous and indefinite, the court said, p. 211:

"It will be seen the respondents were accused of unlawfully: (1) Manufacturing certain intoxicating liquor; (2) selling, bartering, exchanging, giving away, furnishing and disposing of certain intoxicating liquor; (3) buying, receiving and keeping certain intoxicating liquor with intent to sell, barter, exchange, give away, furnish and dispose of the same; (4) buying, accepting and receiving certain intoxicating liquor without specific intent; (5) having in their possession more than one-half gallon or two quarts of liquor other than beer, and more than twelve quarts or twenty-four pints of beer, not being licensed druggists or pharmacists, or persons keeping alcohol to be used for mechanical or chemical purposes.

"Rem. Code, § 2057, provides:

" 'The indictment or information must be direct and certain, as it regards . . . the crime charged.'

"Section 2065 provides:

" 'The indictment or information is sufficient if it can be understood therefrom . . . that the act or omission charged as the crime is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.'

"Section 2059 provides:

" 'The indictment or information must charge but one crime, and in one form only, except that where the crime may be committed by use of different means, the indictment or information may allege the means in the alternative.'

"These statutes are plain and unambiguous and, when taken together, clearly define the proper rule to be applied in this case, which is, that but one crime may be charged in the same indictment or information, and the allegations setting forth the offense must be sufficiently definite and certain to apprise a person of reasonable intelligence what the accused is called upon to meet.

"The complaint is so palpably duplicitous and indefinite we shall content ourselves by citing some of the authorities which demonstrate that it is so."

So, in contemplation of the Laws of 1937, chapter 119, p. 468, § 1, it is one crime to bring slot machines into this state; another crime to buy them; another, to sell them; another, to *lease* them; another, to *deal in* them; another to have them in possession; and still another to acquire them for use in or keep in a public place.

This act does not fall in the category of statutes which define a crime and specify different ways in which it may be committed. From the very title of the act it is apparent that the legislature intended to define several and distinct crimes—else why, in the title of the act, use the word in the plural instead of the singular? To "lease" a slot machine is one crime; to "deal" in a slot machine is another.

■ If it is sought to charge the crime of dealing in slot machines on any other theory than buying and selling them, then the information must set up specific facts so that the person charged can understand therefrom the act or omission he must be prepared to meet.

The state failed to prove that appellant bought and sold slot machines. The information failed to state facts upon which the charge could be supported on any other theory.

We think the information was defective because of duplicity and indefiniteness. In any event, it is clear that the evidence was insufficient to sustain a conviction of the crimes as charged.

The judgment is reversed and the cause is remanded, with direction to dismiss the action.

SIMPSON, C. J., MILLARD, and ROBINSON, JJ. concur.

MALLERY, J. (dissenting)—The majority opinion holds the information to be bad because (1) it did not set up facts sufficient to inform the appellant in what manner the state would attempt to prove that he dealt in slot machines; and (2) it is duplicitous and fatally indefinite.

(1) The information, in count one, for example, alleged that the defendant "did deal in and lease to the Houghs Creamery . . . in the city of Seattle . . . a slot machine." This follows the language of the statute.

That is sufficient to inform him of the act charged and sustain a claim of former jeopardy if prosecuted again for the same offense.

"It is undoubtedly the rule in this jurisdiction that it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined and the language used is sufficient to apprise the accused, with reasonable certainty, of the nature of the accusation, so that he may be able to avail himself of his acquittal or conviction as a protection against further prosecutions for the same offense. *State v. Ryan,* 34 Wash. 597, 76 Pac. 90; *State v. Martin,* 94 Wash. 313, 162 Pac. 356; *State v. Richter,* 95 Wash. 544, 164 Pac. 250." *State v. Randall,* 107 Wash. 695, 182 Pac. 575.

(2) I have no quarrel with *Seattle v. Molin, supra.* It is not in point in the instant case. It alleged not only five distinct and separate ways in which the offense was committed, but they were inconsistent with each other, as for instance, (a) manufacturing and (b) buying the same identical liquor. This was properly held to be duplicitous.

In the case at bar, the information alleges the defendant "did deal in and lease" the slot machine. I think the term *"deal in"* obviously includes the term *"lease."* It is therefore neither inconsistent, different, or duplicitous.

The judgment should be affirmed.